[Crim. No. 9080. In Bank. Dec. 9, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD J. RIDLEY, Defendant and Appellant.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

672

Donald J. Ridley, in pro. per., and Joseph Rosen, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Charles A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, J. — Donald Ridley and Nathan Moore were found guilty by a jury of first degree robbery of Mike Bennett (count I), assault with a deadly weapon with intent to commit murder upon Earl Watley and Bennett (counts II and III), and first degree robbery of G. Del Castillo, Henry Sidenfaden, Vincent Palacios, and Mike Makaron (counts IV through VII). Ridley was sentenced to prison on each count, the terms to run concurrently, and he alone appeals.

He contends, among other things, that the court erred to his prejudice in admitting evidence of certain accusatory statements and his responses thereto, and in instructing the jury regarding such evidence. We have concluded that his contention is correct and that the errors resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½; *Fahy* v. *Connecticut*, 375 U.S. 85, 86-87 [84 S.Ct. 229, 11 L.Ed.2d 171] ; *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

The evidence pertaining to counts I through III may be summarized as follows :

About 11:30 a.m. on July 20, 1963, Moore and another man entered Mike's Loan and Sales Company, a pawnshop in Los Angeles. After talking to the proprietor, Bennett, concerning the purchase of a ring, Moore pointed a gun at him. Bennett tried to knock the gun from Moore's hand, and the gun discharged hitting Watley, an employee. Bennett then ducked down behind a counter, and Moore leaned over the counter and shot him several times. About the same time that Moore displayed his gun the man who had accompanied him into the shop pointed a gun at Muriel Crowder, an employee, and told her it was a holdup and to get on the floor, and she complied; she testified that the man was Ridley. One of the robbers took jewelry from the vault in the shop, apparently after Bennett and Watley were shot, and the robbers then fled.

Bennett also identified Ridley as one of the robbers, and a Mary Taylor testified that about 11 a.m. on July 20, 1963, she saw Ridley run out of the pawnshop.

Ridley took the stand and denied participating in the July 20 offenses. He testified that he was elsewhere with three named persons when the offenses were committed. The three persons were not called to testify. Moore admitted participating in the offenses at the pawnshop but testified that Ridley was not with him. Moore said that two other men were with

him "on that job," one of whom resembled Ridley "rather closely." Moore's credibility was attacked by his prior confession which named Ridley as one of the participants in the pawnshop offenses. Moore testified that the police made him falsely accuse Ridley "by force." A police officer who was present when Moore made the prior confession testified that Moore had not been abused in any way.

The following evidence was introduced relating to counts IV through VII:

About 2 p.m. on July 12, 1963, Moore and two other men, all armed with shotguns, entered Del's Sporting Arms, a gunshop in Los Angeles. Proprietor G. Del Castillo, employee Palacios, and two customers (Makaron and Sidenfaden) were ordered by Moore to go into a back room, where each was tied up and money taken from him. Guns and ammunition were also taken from the store. Two of the guns were later found in a house where defendants sometimes stayed.

Makaron testified that he thought Ridley was one of the robbers, and Sidenfaden testified that Ridley "resembles" one of the robbers. Neither was able to make a positive identification. Mark Del Castillo, a 13-year-old boy who was at the shop when the robberies were committed, pointed out Ridley at the trial as one of the robbers. At the preliminary examination he had identified Moore as one of the robbers but had not mentioned Ridley. He testified that he had not identified Ridley at that time because "they just kept on questioning me and they didn't ask me about him. And I was going to tell them, but I didn't have a chance to." He further stated that at the preliminary examination he had pointed out Moore in response to the general question, "Now, do you see anybody present here in court today who was engaged in that robbery?" and that Ridley was also present at the preliminary examination.

G. Del Castillo testified that none of the robbers resembled Ridley. Ridley denied participating in the July 12 robberies and testified that on that afternoon he was elsewhere with the same persons he was with when the offenses in the pawnshop were committed. Moore testified that he participated in the July 12 robberies but that Ridley had not done so and that the other two robbers were the same men who were with him at the pawnshop robbery. Moore's credibility was attacked by his prior confession which named Ridley as a participant in the July 12 robberies.

With respect to the accusatory statements the record shows

that Ridley was arrested by Officer Barclay shortly before noon on August 2, 1963, and taken to the police station. Barclay testified that some two hours later he asked Ridley "to tell me what he knew about Mike's Pawn Shop robbery and shooting," and Ridley stated "he didn't know anything about a pawn shop robbery." Ridley confirmed this testimony, and added that he thereupon also declared to Barclay that "from this point on I don't have anything to say until I talk to my attorney."

Barclay further testified as follows: On August 5, 1963, he and another officer interrogated Ridley concerning the crimes. They advised him that Moore had already told "all about the Mike's Pawn Shop job and Del's Sporting Goods Shop," and they asked him why he did not go ahead and tell about it. Ridley replied that he wanted to talk to his attorney first and that he would then "lay it all out for" them. They reminded him that Moore had given a statement "laying it all out," and Ridley said, "Well, I wish the guy would have kept his mouth shut. . . . It's my job. I would have laid it all out for you, but I don't want to tell anything until after I talk to my attorney." The next day, August 6, 1963, Officer Barclay talked with Ridley and Moore together. Ridley said that he had seen his attorney, and the officer asked, "Are you going to tell me about it like you promised?" Ridley replied that he was not going to do so because his attorney told him "to keep" his "mouth shut." The officer said, "Well, you know Moore here has already told us about it. You might as well go ahead," and Ridley made no response. In answer to questions, Moore named Ridley as one of the persons who was with him "on the Del's Sporting Goods job." The officer then asked Ridley, "What do you have to say to that, Don?" and Ridley "just dropped his head and said, 'Nothing.' "

Ridley unsuccessfully objected to the introduction of Barclay's testimony concerning the August 6 interrogation, on the ground that since he was acting on his attorney's advice his conduct could not be taken as an admission. Thereafter Ridley denied the August 5 statements attributed to him by Barclay, and testified that "I told him before I talked or said anything that I would consult my attorney." With respect to the August 6 conversation, Ridley admitted that Moore named him as a participant; however Ridley further testified that he had already told Barclay "that I would say nothing from that point on, and I told him, 'Nothing' "; that in so

doing he was following the advice of his attorney and was not intending to make any kind of a statement.

The trial court clearly erred in overruling Ridley's objection to the testimony regarding the August 6 interrogation. ■ Where a defendant in response to an accusatory statement indicates that on the advice of his attorney he is not answering the accusation, it is improper to admit evidence of the statement and his response thereto. (*People* v. *Abbott*, 47 Cal.2d 362, 373 [303 P.2d 730] ; *People* v. *McGee*, 31 Cal.2d 229, 238-239 [187 P.2d 706].) ■ Similarly if a defendant makes no response to an accusatory statement and by remaining silent is exercising his constitutional privilege against self-incrimination, it is error to admit the evidence. (*People* v. *Cockrell, ante,* p. 659 [47 Cal.Rptr. 788, 408 P.2d 116]). Under such circumstances the defendant's response cannot give rise to an inference of acquiescence in the truth of the statement or of guilty consciousness, and admission of the evidence constitutes error. ■ Further, the instructions given by the court expressly, and improperly, permitted the jury to infer from Ridley's conduct an admission that the August 6 accusations were true.[1] (Cf. *Griffin* v. *California*, 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106].)

In the light of the entire record it appears reasonably probable that a result more favorable to Ridley would have been reached in the absence of the errors relating to the August 6 interrogation. (Cal.Const., art. VI, § 4½; *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) The officer's statement, ''Well you know Moore here has already told us about it. You might as well go ahead'' may well have been viewed by the jury as an accusation that Ridley was involved in the crimes at both the pawnshop and the gunshop. As

---

[1]The jury was given the following standard instruction relating to accusatory statements: ''If you should find from the evidence that there was an occasion when the defendant, under conditions which fairly afforded him an opportunity to reply, failed to make denial in the face of an accusation, expressed directly to him or made in his presence, charging him with the crime for which he now is on trial or tending to connect him with its commission, and if you should find that he heard the accusation and understood its nature, the circumstance of his silence and conduct may be considered against him as indicating an admission that the accusation thus made was true. Evidence of such an accusatory statement is not received for the purpose of proving its truth, but only to explain the conduct of the accused in the face of it; and unless you should find that his conduct at the time indicated an admission that the accusatory statement was true, you should entirely disregard that statement.''

noted, the day before the officer made the quoted statement, the police had told Ridley that Moore had already told "all about the Mike's Pawn Shop job and Del's Sporting Goods Shop." Under the instructions given there appears to be a substantial likelihood that the jury would have viewed Ridley's silence in response to the statement as an admission that he was involved in the offenses. Similarly it appears likely that the jury would have viewed Ridley's response of "Nothing" as an admission of the truth of Moore's statement that Ridley was with him "on the Del's Sporting Goods job." There are substantial conflicts in the evidence as to whether Ridley committed the offenses of which he was convicted, especially with respect to those at the gunshop. Under the circumstances the errors require that the judgment be reversed.[2]

Ridley also contends that there has been a violation of the proscription in Penal Code section 654 against multiple punishment by the imposition of separate punishments for the first degree robbery of Bennett (count I), the assault with a deadly weapon with intent to commit murder upon Bennett (count II), and the assault with a deadly weapon with intent to commit murder upon Watley (count III). This issue may arise upon retrial, and it is therefore appropriate to consider it for purposes of guiding the trial court.

Penal Code section 654 provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one." The section applies not only where one act in the ordinary sense is involved but also where there is a course of conduct that violates more than one statute and comprises an indivisible transaction. The divisibility of a course of conduct depends upon the intent and objective of the defendant, and if all the offenses are incident to one objective the defendant may be punished for any one of them but not for more than one. (*People* v. *McFarland*, 58 Cal.2d 748, 760 et seq. [26 Cal.Rptr. 473, 376 P.2d 449]; *Neal* v. *State of California*, 55 Cal.2d 11, 18 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Houghton*, 212 Cal.App.2d 864, 872 et seq. [28 Cal.Rptr.

[2]This conclusion renders it unnecessary to consider whether defendant's statements were inadmissible under *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

351]; *People* v. *Donohoe,* 200 Cal.App.2d 17, 30-31 [19 Cal. Rptr. 454].)

■ Here it appears that the assault upon Bennett was the means of perpetrating the robbery and that both offenses were incident to one objective, robbery. Accordingly, if upon retrial the same evidence is introduced relating to this point and Ridley is convicted of both offenses, he may be sentenced only for the first degree robbery, the more serious of the two offenses. (See Pen. Code. §§ 213, 217.) ■ A different problem, however, is presented by the count charging the assault upon Watley.

Section 654 is not " 'applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.' " (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 20-21; *People* v. *Zurica,* 225 Cal. App.2d 25, 32 [37 Cal.Rptr. 118].) ■ As stated in *Neal,* the purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability and a defendant who commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons is more culpable than a defendant who harms only one person. ■ Here the robbers in perpetrating the offenses in the pawnshop used deadly weapons and thus employed a means which was likely to, and which in fact did, harm more than one person. Sentence may therefore be imposed for the assault upon Watley as well as for the first degree robbery of Bennett if upon retrial Ridley is convicted of both of these offenses.

Other contentions by Ridley are without merit and need not be discussed.

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and White, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.