[Crim. No. 11278.   Second Dist., Div. Two.   Sept. 14, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN BRIAN LOGAN, Defendant and Appellant.

Anthony C. Beilenson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce Dodds, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—As a consequence of activity on three different occasions Logan was convicted of first degree robbery (Pen. Code, §§ 211, 211a), attempted robbery (Pen. Code, §§ 211, 664), and four counts of assault with intent to murder (Pen. Code, § 217). From a sentence to consecutive terms on all counts, he has appealed.

1. Gerald Ferguson, a bar owner, was held up by Logan and two other men on December 30. Logan fired several shots at Ferguson, saying ''I don't care whether I have to shoot you or what, I've got five to life to go for this.'' Logan also fired at a beer salesman, wounding him, and fled in Ferguson's car with $7,000. The evidence amply supported Logan's conviction for robbery.

2. The attempted-robbery count and one count of assault with intent to murder were based on the holdup on January 13 of Alexander Pimienta, a restaurant owner, who identified Logan as the man who came into the kitchen of his restaurant and said ''This is a holdup.'' When Pimienta laughed, Logan fired a shot into the concrete floor and demanded that Pimienta open the safe. The latter walked toward the dining room, and Logan then shot him in the upper leg and told him to crawl over and open the safe. Pimienta refused to do so. Logan then unsuccessfully attempted to open the cash register, and finally left without getting any money.

Logan contends that his assault on Pimienta showed no evidence of an intent to murder. Intent to murder is a question of fact to be determined from the evidence in the same manner as any other finding. ''The nature of the assault, especially the weapon used and the manner in which it was used, the actual consequences of the assault, including the nature, seriousness, and location of the wound, as well as consequences likely to follow, . . . are among the circumstances that may support a finding that the assault was made

with intent to commit murder.'' (*People* v. *Becerra*, 223 Cal.App.2d 448, 450 [35 Cal.Rptr. 808], quoting 25 Cal.Jur. 2d, Homicide, § 165, pp. 678-679.) ▮ Here, it is apparent from the circumstances of the assault, including the firing of a shot into the upper leg of the victim at close range, that Logan acted with a callous indifference to human life. As the trial court said, ''the circumstances of the shooting as revealed by the evidence do indicate a wanton, malicious and malignant heart, from which legal malice aforethought may readily be inferred.''

▮ However, under the rule laid down in *People* v. *Ridley*, 63 Cal.2d 671 [47 Cal.Rptr. 796, 408 P.2d 124], the sentencing of defendant for attempted robbery and for murderous assault on the restaurant owner is deemed double punishment for the same act (Pen. Code, § 654) since ''. . . it appears that the assault . . . was the means of perpetrating the robbery and that both offenses are incident to one objective, robbery. Accordingly . . . he may be sentenced only for first degree robbery, the more serious of the two offenses.'' (*People* v. *Ridley*, 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124].) Since attempted robbery was the more serious offense in this case, it was double punishment under the *Ridley* rule to impose an additional sentence on defendant for the concurrent murderous assault. ▮ Although a criminal may believe, as did this defendant, that excessive violence in the course of a robbery will not bring added punishment, such a belief is unfounded, and violence still reaps its own harvest. Under the indeterminate sentence law (Pen. Code, § 1168) the Adult Authority fixes the term and duration of a defendant's imprisonment and determines his eligibility for parole on the basis of his previous history and the crimes for which he has been committed. In carrying out these functions it may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant in his criminal career. (Pen. Code, §§ 5077, 5078, 1168; *Azeria* v. *California Adult Authority*, 193 Cal.App.2d 1, 5 [13 Cal.Rptr. 839]; *In re Harris*, 80 Cal.App.2d 173, 178-179 [181 P.2d 433].) In aggravated cases of robbery and assault the Adult Authority may, to put it plainly, lock the cell door for life and throw away the key.

▮ 3. The remaining three counts of assault with intent to murder arose out of a gun battle with the police at the time of Logan's arrest on January 19. Logan's suggestion that he lacked specific intent to murder the police officers during the gun battle trespasses into absurdity. The testimony showed

that defendant leaped from his car and at a distance of 15 to 20 feet opened fire on two of the officers before their car halted, that two of his shots shattered windows in the police car, and that a later shot missed another officer by a foot. We think it an understatement to say that intent to kill was readily inferrable from defendant's near success in killing the officers before they had a chance to return his fire. (*People* v. *Lee Kong*, 95 Cal. 666 [30 P. 800, 29 Am.St.Rep. 165, 17 L.R.A. 626] ; *People* v. *Pineda*, 41 Cal.App.2d 100 [106 P.2d 25] ; *People* v. *Alexander*, 41 Cal.App.2d 275 [106 P.2d 450, 916].) █ Double punishment is not a factor in those counts, for each assault was directed against a different officer. (*People* v. *Ridley*, 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124].)

The remaining points on appeal are without merit and require no discussion.

The sentence on count III is vacated. In all other respects the judgment and sentence are affirmed.

Roth, P. J., and Herndon, J., concurred.