**STATE of Minnesota, Respondent,**

v.

**Jeffrey Robert KISSNER, Appellant.**

**No. C2–95–229.**

Court of Appeals of Minnesota.

Dec. 12, 1995.

Review Denied Feb. 9, 1996.

Hubert H. Humphrey III, Attorney General, Catherine M. Keane, Assistant Attorney General, St. Paul, L. Douglas Storey, Cottonwood County Attorney, Victor Vieth, Assistant County Attorney, Windom, for Respondent.

Deborah K. Ellis, St. Paul, for Appellant.

Considered and decided by CRIPPEN, P.J., TOUSSAINT, C.J., and KALITOWSKI, J.

## OPINION

CRIPPEN, Judge.

Appellant Jeffrey Kissner challenges the sufficiency of the evidence presented to convict him of criminal vehicular homicide and criminal vehicular operation causing substantial bodily harm. He also argues that the trial court erroneously applied a multiple-victim exception to calculate his sentences. In addition, he challenges the following: the trial court's jury instruction on gross negligence; the sufficiency of the evidence used to convict him of careless driving; a trial court ruling that would have allowed the use of a prior burglary conviction to impeach him; the court's rejection of his guilty pleas to misdemeanor offenses; and, the propriety of certain comments in the prosecutor's closing argument. We affirm.

## FACTS

Appellant's convictions arose out of a front-end-to-front-end collision involving a Ford Bronco driven by him and a Chevrolet Corsica driven by Julie Bissette. The collision caused the deaths of Julie Bissette and her two nieces who were riding with her at the time. The accident also injured Tammy Bissette, the driver's sister-in-law, the fourth person in the Chevrolet.

It is undisputed that appellant somehow entered his passing lane without taking account for the fact that the Chevrolet, traveling nearby in an opposite direction, occupied that lane. On appeal, the parties debate the weight of the evidence by submitting competing analyses of five other facets of evidence regarding the accident and appellant's conduct:

(a) First, the parties discuss the distance between the location of appellant's attempted pass and the beginning of a no-passing zone. Tammy Bissette testified that the northbound Chevrolet was side-by-side with a southbound car when appellant's Ford pulled out from behind the car and into the front of the Chevrolet. A no-passing zone began approximately 325 feet south of the spot where the Chevrolet and appellant's Ford had come to rest. Measuring the distance in terms of seconds, a state trooper estimated that approximately three to four seconds separated the Ford from the start of the no-passing zone, assuming that appellant was traveling between 55 and 65 miles per hour.

(b) A second dispute involves the appellant's speed before the accident. The posted speed limit along the highway where the accident occurred was 55 miles per hour. Approximately eight-tenths of a mile before the scene of the accident, while approaching the highway from a crossroad, one witness saw appellant drive in front of him on the highway at an estimated speed of 55 miles per hour. A second witness, the driver of a

car that appellant passed before the accident occurred, testified that appellant was traveling at approximately 65 miles per hour within seconds of the collision. That second witness had set his own cruise control to 56 or 57 miles per hour. In the opinion of a state trooper who examined the scene of the accident, appellant's Ford was traveling faster than the Chevrolet. Tammy Bissette testified that the Chevrolet was traveling at 55 miles per hour. In a statement given to a state trooper approximately one week after the accident, appellant stated that his speed was 55 miles per hour.

(c) The third relevant category of additional evidence relates to appellant's consumption of beer before the accident. The parties stipulated that appellant's blood alcohol concentration tested at a level of 0.03 approximately one hour after the accident. The stipulation further indicated that a blood alcohol concentration of that level could be attributed to the consumption of one to two beers within one hour of the time of the accident. In addition, a trooper from the Minnesota State Patrol and a deputy sheriff located an open can of beer on the front floor of appellant's Ford soon after the accident. Both of those witnesses described the can as containing an inch or two of liquid that smelled like beer, and they noted that the can was cool to the touch. When the trooper examined the Ford more extensively on the day after the accident, he discovered a second, empty beer can on the floor behind the driver's seat.

(d) A fourth additional set of facts presented at trial concerns the weather at the time of the accident. One driver on the scene described the weather as "hazy" and "misting at times a little bit." He recalled that he and most of the drivers on the highway that afternoon had their headlights on. Julie Bissette's father, Roger Bissette, Sr., who was riding in a car approximately one-fourth of a mile to the north of the Chevrolet, also described the weather conditions as misting but stated that he did not consider visibility limited. He testified that the headlights of his own car were on. Julie Bissette's brother, Roger Bissette, Jr., who drove with his father in the car ahead of the Chevrolet, testified that appellant's Ford had its parking lights on. When one of the troopers arrived at the scene, he noticed that appellant's parking lights were on. Testing of the Ford's headlights by another trooper indicated that the headlights were not illuminated at the time of the accident.

(e) The final grouping of additional evidence consists of appellant's alleged misdemeanor traffic violations: driving without a seatbelt and transporting a child under the age of four without a child restraint. At the time of the accident, appellant was traveling with his seventeen-month-old son in the front seat of the Ford. None of the witnesses who testified had observed a child seat in appellant's vehicle that day. One week after the accident, appellant told a state trooper that his son had not been in a child restraint at the time of the collision. Appellant also stated that he himself had not been wearing a seat belt. The trooper reached a similar conclusion, based on the damage to the dashboard and the position of the driver's seatbelt in the Ford.

A jury convicted appellant of three counts of criminal vehicular homicide; one count of criminal vehicular operation causing substantial bodily harm; one count of careless driving; one count of driving with an open bottle; one count of driving without a seatbelt; and one count of transporting a child without a child restraint.

The trial court imposed concurrent sentences of 58 months, 78 months, 88 months, and 19 months, for the four felony convictions. Because separate sentences were imposed for each charge, criminal history points for the first two charges under the guidelines result in the 78 and 88 month sentences.

## ISSUES

1. Was sufficient evidence presented in the trial court for a reasonable jury to have found appellant guilty of grossly negligent driving?

2. Did the trial court properly impose multiple sentences by applying a multiple-victim exception to the sentencing statute governing conduct constituting more than one offense?

## ANALYSIS

### I. Sufficiency of the Evidence

■ Appellant argues that there was insufficient evidence to convict him of criminal vehicular felony offenses, which involve the element of gross negligence. Minn.Stat. § 609.21, subds. 1(1), 2a(1) (1994). Grossly negligent behavior lacks even scant care. *State v. Bolsinger,* 221 Minn. 154, 158, 21 N.W.2d 480, 485 (1946).

■ On an appeal challenging the sufficiency of the evidence, we must affirm the jury's verdict if the jury reasonably could have found each element of the charged crimes. *State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988). We must view the evidence in a light most favorable to the prosecution. *State v. Elmourabit,* 373 N.W.2d 290, 292 (Minn.1985). But we must also recognize the state's burden to prove the required elements of the charged offenses beyond a reasonable doubt. *State v. Kaster,* 211 Minn. 119, 121, 300 N.W. 897, 899 (1941). In cases relying on circumstantial evidence, we can affirm a verdict only if the circumstances proved are consistent with the hypotheses that the accused is guilty and inconsistent with any rational hypothesis of innocence. *State. v. Jones,* 516 N.W.2d 545, 549 (Minn. 1994). Even in cases involving circumstantial evidence, this court must give due deference to the jury, which is in the best position to evaluate the evidence. *State v. Anderson,* 379 N.W.2d 70, 75 (Minn.1985), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986).

Applying the appropriate standard of review, we conclude that a jury could have reasonably found each element of the charged offenses, including the element of gross negligence required to prove criminal vehicular homicide and criminal vehicular operation causing substantial bodily harm. We are mindful of the fact that this case is lacking in a single dramatic piece of evidence, such as driving while intoxicated. Nevertheless, the facts taken together are consistent with a guilty verdict.

Several aspects of appellant's conduct support a finding of gross negligence. Of primary concern is the fact that the collision occurred in appellant's passing lane, which was occupied immediately ahead by an oncoming vehicle. According to Tammy Bissette's testimony, her northbound Chevrolet was approximately even with a car in the opposite lane when appellant's Ford emerged from behind the southbound car and struck the Chevrolet. In other words, appellant apparently had just begun to pass the vehicle ahead of him when the collision occurred. There is also cause for particular concern about the proximity of the collision to a no-passing zone. Because of evidence on the distance between the no-passing zone and the collision site, both in terms of feet and seconds, a jury could have reasonably inferred that appellant would have been unable to complete his pass before reaching the no-passing zone. An attempt to pass a vehicle in the circumstances of this case constitutes sufficient evidence of gross negligence.

Evidence on the speed of appellant's Ford enlarged the cause to find that his conduct demonstrated a lack of even scant care. The evidence permitted a finding that appellant drove in excess of the speed limit, and the jury also heard evidence suggesting that a reduced speed may have been appropriate because of misty weather conditions.

The remaining evidence similarly points toward the rational conclusion that appellant caused the collision by driving in a grossly negligent manner. For example, from the discovery of a half-empty beer can in the front of the Ford, the jury could have found that appellant was drinking from the can at the time of the accident and that his attention was diverted from the road. To demonstrate further appellant's lack of even scant care, the prosecution presented evidence indicating that appellant had only his parking lights on during misty weather conditions, while most other drivers were using their headlights. Finally, appellant's apparent failure to protect either himself or his infant son could have suggested to the jury that appellant was driving with little respect for the rules of the road.

Although appellant suggests that the jury could have interpreted the evidence in a manner consistent with his innocence, we find that the hypothesis of wrongdoing short

of gross negligence is not rational and that the jury could have reasonably rejected it. The jury acted within the scope of reasonableness by reaching the verdict that it did.

## II. Multiple Sentences

■ Appellant next argues that, even if the jury properly convicted him of the charged offenses, multiple sentences are improper in the circumstances of this case. Appellant's argument lends support for modification of his sentences to one term of imprisonment for 58 months.

As a general rule, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses * * *." Minn.Stat. § 609.035, subd. 1 (1994). Courts have recognized an exception to this rule in certain cases involving multiple victims. State ex rel. Stangvik v. Tahash, 281 Minn. 353, 360, 161 N.W.2d 667, 672 (1968).

Appellant challenges the trial court's application of the multiple-victim exception to his convictions for nonintentional crimes. In State v. Gartland, the Minnesota Supreme Court rejected a defendant's argument that the multiple-victim exception applied only to offenses requiring the element of intent. 330 N.W.2d 881, 883 (Minn.1983). The Gartland court also affirmed treatment of one of two offenses as a prior conviction when sentencing the defendant for the second offense. Id. The offenses at issue in Gartland were two counts of criminal negligence resulting in death under Minn.Stat. § 609.21 (1982). The evidence in the case showed that the defendant, whose vehicle struck a car with two occupants, suffered the effects of drinking and lack of sleep and drove his vehicle in a residential area at a speed estimated at 77 miles per hour. Id. at 882. Appellant argues that the Gartland holding, if it otherwise governs this case, must give way to the fundamental aim in Minn.Stat. § 609.035 to avoid unfairly exaggerating the criminality of a defendant's conduct.

When the supreme court created the multiple-victim exception in State ex rel. Stangvik v. Tahash, the court discussed the legislative policy behind Minn.Stat. § 609.035, and it noted that the purpose of the statute is "to leaven the harshness which may result from multiple prosecutions arising out of a single criminal episode." 281 Minn. at 361, 161 N.W.2d at 672. The supreme court has since reiterated that the purpose of Minn.Stat. § 609.035 is "to protect against exaggerating the criminality of a person's conduct." State v. Prudhomme, 303 Minn. 376, 379, 228 N.W.2d 243, 245 (1975) (citing People v. Ridley, 63 Cal.2d 671, 47 Cal.Rptr. 796, 800, 408 P.2d 124, 128 (1965)) ("[A] defendant who commits an act of violence * * * by means likely to cause harm to several persons is more culpable than a defendant who harms only one person.").

Consistent with the policy of Minn.Stat. § 609.035, courts have limited application of the multiple-victim exception to sentences that do not unfairly exaggerate the criminality of the defendant's conduct. See, e.g., State v. Marquardt, 294 N.W.2d 849, 851 (Minn. 1980) (affirming imposition of two sentences for defendant who fired two bullets that struck seven people in a bar); State v. Rieck, 286 N.W.2d 724, 727 (Minn.1979) (upholding sentences for five counts of aggravated assault where defendant planted a firebomb at a house while five residents were at home). The underlying purpose of the statute requires that we focus on the defendant's conduct rather than the victims' suffering.

Put most strongly, two considerations in the immediate case suggest that multiple sentences would unfairly exaggerate the criminality of appellant's conduct. First, although we conclude that there was sufficient evidence for the jury to find that appellant was grossly negligent and to convict him of the charged offenses, appellant correctly observes that his conduct was less egregious than the offense reviewed in Gartland. The spectrum of "grossly negligent" driving consists of a wide variety of behaviors, some being much more reprehensible than others. The conduct of appellant, while grossly negligent, falls at the less extreme end of this spectrum.

A second concern arises from the fact that the number of victims of appellant's offense arguably was not determined by the nature of his criminal act. Moreover, the severe

consequences of appellant's conduct have already impacted on his punishment, by virtue of his conviction on four felony charges. If appellant had engaged in the same driving conduct, but his behavior had failed to cause any deaths or injuries, the conduct would have constituted a misdemeanor offense. To enlarge appellant's punishment by imposing separate sentences for each victim markedly emphasizes the criminality of his conduct.

■ Despite the evident weight of appellant's sentencing argument, we cannot modify the sentences imposed by the trial court without improperly departing from *Gartland*. *Gartland* deals directly with negligent homicide offenses; consistent with the legislative determination that punishment for driving misconduct depends on the actual consequences suffered by others, the holding leaves no room for the argument that a single felony sentence is the maximum exaggeration of fault for conduct that would be a mere misdemeanor but for the occurrence of a collision with fatalities. In addition, the *Gartland* court, evidently responding to the potential of a motor vehicle in traffic, when driven in a grossly negligent fashion, to destroy the lives of more than one innocent person, does not expressly confine its holding to the particular facts of the case. Moreover, we are mindful that sentencing decisions, including the measure of the defendant's criminality, rest initially within the discretion of the trial court. *See Bolstad v. State*, 439 N.W.2d 50, 53 (Minn.App.1989) (recognizing trial court discretion on determination of defendant's criminal history score). We cannot say that the court erred as a matter of law in its determination of appellant's sentences.

## III. Other Issues

### A. Jury Instruction

■ In appellant's briefs, he argued by implication that the trial court used an inadequate jury instruction regarding gross negligence. Appellant's counsel substantially abandoned this argument at oral argument, and we address it only briefly.

■ Generally, "[a] refusal to give a requested jury instruction lies within the discretion of the trial court." *State v. Daniels*,

361 N.W.2d 819, 831 (Minn.1985). The trial court may reject a party's proposed jury instruction if the substance of the request is already contained in the court's charge to the jury. *Id.* at 832; *State v. Saybolt*, 461 N.W.2d 729, 735 (Minn.App.1990), *review denied* (Minn. Dec. 17, 1990).

In its jury instructions, the trial court defined the term "grossly negligent" as meaning "with very great negligence or without even scant care." This definition comports with the applicable standard form jury instructions. *See, e.g.,* 10 *Minnesota Practice*, CRIMJIG 11.26 (1990). It is also consistent with the definition of "gross negligence" used in the leading Minnesota case on the subject, *Bolsinger*, 221 Minn. at 158, 21 N.W.2d at 485.

The trial court rejected appellant's request that the instructions state that "gross negligence is substantially and appreciably higher in magnitude than ordinary negligence." Appellant's proposed language would have added nothing more of substance, and the trial court acted within its discretion by giving the jury instructions that it gave.

### B. Careless Driving

In addition to challenging his felony driving convictions, appellant appeals his conviction for careless driving under Minn.Stat. § 169.13, subd. 2, on the ground of insufficient evidence. Because we find sufficient evidence of gross negligence to affirm his convictions for the felony charges, we readily find sufficient evidence of ordinary negligence to affirm his conviction for careless driving. *In re Welfare of M.B.W.*, 364 N.W.2d 491, 493–94 (Minn.App.1985).

### C. Use of Prior Conviction

■ Appellant contends that the trial court erroneously ruled before trial that if he chose to testify, the prosecution could impeach appellant by using a six-year-old burglary conviction.

■ Generally, the reviewing court should uphold a trial court's admission of prior convictions for impeachment purposes unless a clear abuse of discretion is shown.

*State v. Bias,* 419 N.W.2d 480, 487 (Minn. 1988).

The governing rule provides that a prior conviction should be admitted for impeachment in a felony prosecution if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn.R.Evid. 609(a). The Minnesota Rules of Evidence do not permit the use of prior convictions if ten years have elapsed since the defendant was convicted and released from confinement. Minn.R.Evid. 609(b). The trial for this case took place in September 1994. Appellant's burglary conviction occurred in 1988, less than ten years before trial.

▮▮▮ In determining whether to admit prior convictions for impeachment purposes, a court should consider five factors: (a) the impeachment value of the prior crime; (b) the date of the conviction and the defendant's subsequent criminal history; (c) the similarity of the past crime with the crime charged; (d) the importance of the defendant's testimony; and (e) the centrality of the credibility issue. *State v. Jones,* 271 N.W.2d 534, 537–38 (Minn.1978).

Appellant's prior burglary conviction has value in impeaching his general credibility and thus satisfies the first *Jones* factor. *State v. Yates,* 392 N.W.2d 30, 32 (Minn.App. 1986), *review denied* (Minn. Sept. 22, 1986); *see also State v. Ross,* 491 N.W.2d 658, 659 (Minn.1992) ("Burglary convictions * * * may properly be admitted for impeachment purposes in appropriate cases under the balancing test of Rule 609(a)(1).").

With respect to the second *Jones* factor, appellant's six-year-old conviction falls within the ten-year time limit of Minn.R.Evid. 609(b). His conviction is not so stale as to make its prejudicial effect outweigh the probative value that it might have on his credibility. *See Yates,* 392 N.W.2d at 32 (affirming decision to admit nine-year-old conviction for impeachment purposes).

▮▮▮ Appellant acknowledges that the third *Jones* factor weighs in favor of the State. In general, the greater the similarity between the prior offense and the present offense, the greater the reason for not allowing use of the prior conviction for impeachment purposes. *Jones,* 271 N.W.2d at 538.

With respect to the fourth *Jones* factor, appellant argues that his testimony was important in advancing his theory of the case. In evaluating the importance of a potential witness's testimony, courts have considered the availability of other evidence in support of the defendant's theory. *See, e.g., State v. Lund,* 474 N.W.2d 169, 173 (Minn.App.1991) (listing witness's prior statement or an accident reconstructionist's testimony as examples of such evidence). The jury at appellant's trial heard testimony from a state trooper regarding an interview that he had with appellant about six days after the accident. Appellant also called a witness who testified that he did not observe appellant driving erratically or with excessive speed when he saw him eight-tenths of a mile before the accident. Although appellant's testimony may have provided the jury with a new perspective about the accident, the existence of other evidence to support his views lessens the importance of his testimony.

Finally, an analysis of the fifth *Jones* factor supports the conclusion that the credibility issue was a central one. Given the fair assumption that appellant would have presented a different version of the accident from the prosecution's witnesses, the prosecution's need to impeach appellant would have been relatively central.

Our application of the *Jones* factors leads us to conclude that the trial court did not abuse its discretion by ruling that the prosecution could have impeached appellant with his prior burglary conviction.

### D. Guilty Pleas

▮▮▮ As his fourth claim of error, appellant asserts that the trial court deprived him of due process and fundamental fairness when it rejected his offer to plead guilty to three of the charges against him: the open bottle charge (Minn.Stat. § 169.122, subd. 2), the seatbelt violation (Minn.Stat. § 169.686, subd. 1(1)), and the child restraint violation (Minn.Stat. § 169.685, subd. 5(a), (b)). "Neither the constitution nor our Rules of Criminal Procedure give to a criminal defendant

an absolute right to have his plea of guilty accepted." *State v. Goulette,* 258 N.W.2d 758, 762 (Minn.1977). Rather, the trial court in its discretion may allow a defendant to plead to less than the entire indictment "in proper cases." *State v. Linehan,* 276 Minn. 349, 353, 150 N.W.2d 203, 206 (1967); *see also* Minn.R.Crim.P. 15.04, subd. 3(2) ("The court *may* accept a plea agreement of the parties when the interest of the public in the effective administration of justice would thereby be served.")

As its reasoning for rejecting appellant's guilty pleas, the trial court stated that acceptance of the pleas "would not streamline or clarify and make clear for the finder of fact anything that they [sic] have to ultimately decide." The trial court may also have been concerned about double jeopardy consequences resulting from a partial guilty plea.

In short, the trial court appeared to conclude that acceptance of the pleas would not necessarily serve the "interest of the public in the effective administration of justice," within the meaning of Minn.R.Crim.P. 15.04, subd. 3(2). Its decision to reject appellant's guilty pleas was not an abuse of discretion.

E. Closing Arguments

▮ The final issue we address is whether the prosecutor made improper remarks in his closing arguments.

▮ The trial court may exercise its discretion in determining whether a particular party's closing argument is improper and warrants a new trial. *State v. Ture,* 353 N.W.2d 502, 516 (Minn.1984). The reviewing court should examine the closing argument as a whole. *State v. Washington,* 521 N.W.2d 35, 40 (Minn.1994); *see also State v. Glaze,* 452 N.W.2d 655, 662 (Minn.1990) (noting that there is less likelihood of error where potentially inappropriate remarks are brief and isolated).

The comment which appellant found offensive reads as follows:

[I]f you agree with what I am saying, it also follows Mr. Kissner was not only conscious at the time of the accident, but that he remembered the accident pretty well,

and he remembered that he had done some things wrong.

This remark followed the prosecutor's discussion of observations that after the accident appellant was leaning over the back seat of his Ford, where a state trooper later found one of two beer cans. Under the prosecution's theory, appellant was trying to hide a can of beer, and his attempt indicated that the accident did not knock him unconscious.

Appellant contends that the statement improperly referred to his decision not to testify, in violation of Minn.Stat. § 611.11. He also argues that by using the phrase "if you agree with" the prosecutor improperly expressed his opinion about the case. *See State v. James,* 520 N.W.2d 399, 405 (Minn. 1994) (stating general rule against opinions). Even if one could indirectly construe the remark as a comment on appellant's failure to testify or as an expression of the prosecutor's opinion, it was only a minor segment of the entire closing argument. Moreover, in light of the overall evidence presented, we conclude that any error was harmless.

### DECISION

The evidence was sufficient to support the convictions for criminal vehicular homicide and criminal vehicular operation causing substantial bodily harm because the jury reasonably could have found that appellant's conduct was grossly negligent. There was also sufficient evidence to support the conviction of careless driving. The imposition of multiple sentences does not unfairly exaggerate the criminality of appellant's felony offenses. The trial court did not abuse its discretion in giving a jury instruction consistent with standard form jury instructions. The court further acted within its discretion by ruling that the prosecution could use a six-year-old burglary conviction for impeachment purposes and by rejecting appellant's offer to plead guilty to three of the eight charged offenses. The prosecutor's statements made in closing arguments did not constitute reversible error.

**Affirmed.**