Filed 6/4/14  P. v. Martinez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049815 |
| v. | (Super. Ct. Nos. RIF153604, BAF006300) |
| ROBERT JOHN MARTINEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Eric G. Helgesen, Judge.  Affirmed and remanded with instructions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant of second degree murder (Pen. Code, § 187, subd. (a)),[1] gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), and driving while his license was suspended for a prior conviction of driving under the influence (Veh. Code, § 14601,2, subd. (a)).  Defendant admitted an on-bail enhancement allegation.  The court sentenced him to an aggregate sentence of 17 years to life, comprised of 15 years to life for the murder conviction, a consecutive two years for the on-bail enhancement; 10 years for the gross vehicular manslaughter conviction, plus two years for the on-bail enhancement, stayed pursuant to section 654; and a concurrent term of 180 days in jail for the driving with a suspended license conviction.

Four months later, in a separate case based on an incident that had occurred over a year before the murder, a jury convicted defendant of carjacking (§ 215, subd. (a)) and felony evading of a peace officer with wanton disregard for the safety of persons and property (Veh. Code, § 2800.2).[2]  The court sentenced defendant to nine years for the carjacking and a consecutive eight months for the felony evading.  The court ordered that defendant's sentence in the murder case run consecutive to the sentence imposed in the carjacking case.

On appeal defendant contends (1) his punishment for felony evading should be stayed under section 654, and (2) the court's order that he pay vehicle storage fees in the murder case mislabeled the payment as "restitution."  We agree the court's order concerning vehicle storage fees should be corrected.  In all other respects, we affirm the judgment.

---

[1]     All statutory references are to the Penal Code unless otherwise stated.

[2]     The court struck a section 12022.1 enhancement that defendant committed the offenses while released from custody on bail.  A prior trial had resulted in a mistrial in February 2009, due to the jury's inability to reach a verdict.  We construed the notice of appeal in this case to have been timely filed because judgment was stayed pending the outcome of the murder case and defense counsel was not timely informed when the stay was lifted.

FACTS

*The Carjacking and Evading a Peace Officer*

Around 1:00 a.m. on August 16, 2008, on Mountain View Avenue (a residential street), a woman was inside a van parked in a driveway with its rear door open. A light-colored car driven by defendant hit the van's rear corner. Defendant reversed the car and drove away "really quick." He had also hit and damaged a fence.

About 30 minutes later, a man in a house on Mountain View heard the sound of running water, went outside, and saw defendant and his sister using a hose to put water in the radiator of a small gray car parked in the man's driveway. The man asked defendant to move his car off the driveway. Defendant argued with him for a little bit, but left after the man helped defendant push the car out of the driveway. Both defendant and his sister had appeared to be under the influence of some substance.

In the early morning hours of that day, 17-year-old Carlos Ortega was driving his cousin's white Nissan Altima down Mountain View looking for a friend's house. Ortega saw defendant and his sister standing next to a small gray Mazda. Defendant walked in front of Ortega's car. Ortega braked and partially opened his window. Defendant asked in an aggressive tone, "You know who I am?" Ortega replied, "No," and said he was looking for an address. Defendant opened the driver's side door of Ortega's car. Ortega asked defendant if he needed help and defendant said, "No, you're going to give me the car. You're going to get out [of] the car." Defendant put his hands behind his back. Ortega feared defendant was reaching for a gun. Afraid for his life, Ortega exited the car. Defendant sat in the driver seat; his sister sat in the passenger seat. They drove away. Ortega ran to a nearby house and called the police.

3

Officers were dispatched to the area of the carjacking at about 1:30 a.m. to look for a white Nissan Altima. Three officers went to separate locations while another one roved the area. Shortly after 2:00 a.m., the officers decided "to break down the perimeter, believing that the vehicle [might] have gotten out before [they had] set up."

As one of the officers was driving away, he spotted a white car driving with its headlights off. The white car then turned on its lights. The car's license plate was the one reported in the carjacking. The officer followed the car onto the freeway. The officer was in uniform and driving a marked sheriff's patrol vehicle. He followed the white car for several minutes, without activating his lights, at a speed of between 60 to 80 miles per hour. As they approached an exit, defendant accelerated at a high rate of speed, cut off a semi-truck, and drove onto the off-ramp. The officer activated his lights and siren and followed the car off the freeway. Defendant drove through an intersection without stopping at the stop sign, at a speed of over 80 miles per hour. Defendant's car failed to negotiate a turn and drove straight into the desert and then onto a dirt road used by the power line company. The officer stopped his pursuit temporarily to wait for the dirt and debris kicked up by defendant's car to settle. The officer activated his spotlights and overhead lights, and saw that the car had crashed and was on fire. The officer saw a man and woman run off into the brush.

About an hour later, the highway patrol found a woman walking on the freeway and brought her for identification to the location where the stolen car had crashed. The officer who had chased the white car identified her as the female who had run from the car.

The woman, Jenisa Lara, was taken to the hospital. On the way there, she continuously asked where her brother was and was he okay. Lara told a doctor that she fell down in a field while looking for her brother. Defendant was identified as Lara's brother.

4

*The Murder, Manslaughter, and Driving With a Suspended License*[3]

At about 12:50 a.m. on October 29, 2009, defendant was out on bail in the carjacking case. He drove on the freeway at over 90 miles per hour while intoxicated and with a suspended license. Dominic Becerra was a passenger.

As defendant sped down the freeway, he changed lanes quickly and sporadically. Only two lanes were open due to construction. Defendant switched lanes into the slow lane behind a semi-truck. He then tried to pass into the other lane, but struck the semi-truck's back left corner. The side of defendant's car was ripped off, killing Becerra, whose body was thrown onto and slid across the roadway.

DISCUSSION

*Section 654 Does Not Bar Punishment for Defendant's Felony Evading Conviction*

Defendant contends the court should have stayed, under section 654, execution of sentence on his Vehicle Code section 2800.2 conviction for willful and wanton driving while evading a peace officer. He argues the carjacking and the evading were committed during a continuous course of conduct and with the same intent and objective, which was simply "to get home."

---

[3] Because defendant's only contention concerning the murder case relates to vehicle storage fees, we recite only the basic facts.

5

Section 654, subdivision (a), provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

By its plain terms, section 654 bars multiple punishments of a single, physical act or omission.  Fifty-four years ago, however, in *Neal v. State of California* (1960) 55 Cal.2d 11 (*Neal*), disapproved on a different point in *People v. Correa* (2012) 54 Cal.4th 331, 334 (*Correa*), our Supreme Court substantially enlarged the statute's scope.  The *Neal* court, recognizing that few crimes result from a single physical act, adopted a test focusing on whether the defendant engaged in an indivisible course of conduct pursuant to a single intent and objective.  (*Neal*, at p. 19.)  In applying this test, the *Neal* court inquired whether all of the crimes were incident to one objective (*ibid*.) and whether one crime served as the means of perpetrating another crime (*id*. at p. 20).

Over 30 years later, in *People v. Latimer* (1993) 5 Cal.4th 1203, our Supreme Court criticized the *Neal* test as a "'judicial gloss' . . . 'engrafted onto section 654'" that can defeat the statute's purpose of matching punishment with culpability. (*Latimer*, at p. 1211.)  Nonetheless, *Latimer* declined to overrule the *Neal* test because, over the course of three decades at that point, the Legislature had incorporated the *Neal* rule into California's sentencing scheme.  (*Latimer*, at p. 1205.)  *Latimer* "stressed, however, that 'nothing we say in this opinion is intended to cast doubt on any of the later judicial limitations of the *Neal* rule.'"  (*Correa*, *supra*, 54 Cal.4th at p. 336.)  Recently, our Supreme Court placed another judicial limitation on the *Neal* rule (*Correa*, at p. 344) after recognizing that the *Neal* test "has been a subject of continuing controversy and given rise to much confusion" (*Correa*, at p. 335).[4]

---

[4] *Correa* rejected dictum in a *Neal* footnote and concluded "section 654 does not bar multiple punishment for violations of the same provision of law."  (*Correa*, *supra*, 54 Cal.4th at p. 344.)

6

These judicial limitations — intended to better correlate punishment with culpability — have narrowed the application of *Neal's* single intent and objective test. (*Correa*, *supra*, 54 Cal.4th at p. 341; *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.) Of these limitations, the following ones are relevant to the case at hand. First and fundamentally, courts avoid viewing a defendant's intent or objective too broadly or amorphously. (*People v. Perez* (1979) 23 Cal.3d 545, 552; *People v. Morelos* (2008) 168 Cal.App.4th 758, 769.) Secondly, in deciding whether a defendant harbored multiple independent objectives, courts consider, inter alia, the following factors: (1) separation in time (*People v. Beamon* (1973) 8 Cal.3d 625, 639 & fn. 11); (2) separate victims (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1586); (3) distinct harms (*People v.Gangemi* (1993) 13 Cal.App.4th 1790, 1800-1801); and (4) whether one crime was "the means" of committing another offense (*Neal*, *supra*, 55 Cal.2d at p. 20). Thirdly, courts have recognized the need for flexibility in applying the rule on a case by case basis: "[T]here can be no universal construction which directs the proper application of section 654 in every instance." (*Beamon*, at p. 636.) "Notwithstanding the apparent simplicity of its language, the applicability of section 654 in a particular case often involves a difficult analytical problem. [Citation.] Each case must be determined on the basis of its own facts, and general principles applicable to one type of case may not apply to another." (*In re Adams* (1975) 14 Cal.3d 629, 633; see also 3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Punishment, § 248, pp. 397-399.)

"'The defendant's intent and objective are factual questions for the trial court'" (*People v. Coleman* (1989) 48 Cal.3d 112, 162), "which is vested with broad latitude in making its determination" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143). When a trial court sentences a defendant for two crimes, without suspending execution of sentence, the judge implicitly finds the acts involved more than one objective. (*People v. Osband* (1996) 13 Cal.4th 622, 730.) The court's findings (express or implied) are subject to the substantial evidence standard of review. (*Coleman*, at p.

7

162.) We review for substantial evidentiary support the court's implied findings that neither of defendant's crimes was incidental to the other or the means by which the other crime was accomplished, and that defendant harbored separate intents. (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.) We view the record in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the court could reasonably deduce from the evidence. (*Ibid.*)

Here, the court expressly found "defendant had reached a place of temporary safety" and the hijacking was completed before the police began to pursue him. The court also found defendant's reckless driving "not only exposed others outside the vehicle to harm, but also defendant's sister . . . ." The court stated, "[I]t's lucky nobody was killed in this."[5]

The Attorney General contends substantial evidence supports the court's finding that section 654 does not apply, arguing that (1) defendant had "reached a place of temporary safety at a location away from Mountain View, allowing him to drive normally," (2) over 30 minutes had passed between defendant's taking the car from Ortega, and (3) defendant's intent for the carjacking was to gain transportation whereas his separate intents and objectives for the felony evasion were to avoid apprehension for stealing a car, running into a van, driving while under the influence, and being under the influence (along with his sister who was also under the influence).

---

[5] Under a multiple victim exception, the "section 654 proscription against multiple punishment does not apply to violations arising from an indivisible course of conduct, if during the course of that conduct the defendant committed crimes of violence against different victims. (*People v. Masters* (1987) 195 Cal.App.3d 1124, 1127.) The exception does not apply here because our Supreme Court has held that a violation of Vehicle Code section 2800.2 "is not, in the abstract, inherently dangerous to human life." (*People v. Howard* (2005) 34 Cal.4th 1129, 1138-1139.)

Defendant claims the carjacking was not completed before the chase began, arguing, "Carjacking, by its nature, typically involves driving the car away from the area where it was taken. Short of parking the car and leaving it somewhere, the crime of carjacking was still ongoing when the pursuit began." He also argues, "[T]he fact that one crime is technically complete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction" (*People v. Bauer* (1969) 1 Cal.3d 368, 377) and that "if all the offenses are incident to one objective the defendant may be punished for any one of them but not for more than one" (*People v. Ridley* (1965) 63 Cal.2d 671, 677.) He contends that his taking the car and fleeing from the police were incident to one objective "— to get home."

Substantial evidence supports the court's implied finding defendant had separate intents and objectives for the carjacking and the evasion and therefore section 654 was inapplicable. Defendant's assertion that his sole objective for the carjacking and the evasion was to get home is too broad and amorphous. (Nor has defendant cited any evidence to support this assertion, not even, for example, the location of defendant's home.) The record reveals defendant had several reasons for fleeing from the police. Both defendant and his sister appeared to be under the influence of a substance while on Mountain View Avenue, where they had run into a van, damaged a fence, and carjacked Ortega's car. By trying to evade the police, defendant may have sought to avoid prosecution or reimbursement claims for substance abuse, driving under the influence, hitting a vehicle and leaving the scene, damaging property, and carjacking. Other factors supporting the court's finding defendant harbored separate intents are that the evading took place 30 minutes after the carjacking and affected different victims with a disparate harm — Ortega, the carjacking victim, suffered the loss of his vehicle, while the victims of defendant's felony evading included defendant's sister, the pursuing peace officer, and the driver of a semi-truck, who were subjected to the risk of grave physical harm and potential death, as found by the court. Finally, because defendant had been driving

9

Ortega's car for over 30 minutes and in a normal fashion at the time he was spotted by law enforcement, substantial evidence supports the court's finding defendant had reached a place of temporary safety and that the felony evading was not the direct and necessary means by which the carjacking was effected. (*People v. Lopez* (2003) 31 Cal.4th 1051, 1058 ["carjacking requires either an intent to permanently or temporarily deprive"; *id*. at p. 1060 ["[S]light movement" is enough to satisfy the asportation requirement'"].)

*The Storage Fee Order Must Be Corrected*

At the sentencing hearing in the murder and manslaughter case, the prosecutor advised the court that the California Highway Patrol had requested $1,653 in "restitution" for storage of the car defendant had driven in the accident. The court found that the storage fee should be paid. The court's June 5, 2012 minute order states, "Court finds . . . the amount of Restitution to be $1653 for storage."

On appeal the parties agree that Vehicle Code section 22655.5, subdivision (d), permitted the court to order defendant to pay the towing and storage fees in question. But because the statute does not refer to the payment of such costs as "restitution," defendant requests that the minute order be revised to reference Vehicle Code section 22655.5, subdivision (d), and to delete the word "restitution."

The parties are correct that the court's order was authorized by Vehicle Code section 22655.5, subdivision (d), which provides: "In any prosecution of the crime for which a vehicle was impounded pursuant to this section, the prosecutor may request, and the court may order, the perpetrator of the crime, if convicted, to pay the costs of towing and storage of the vehicle . . . ." Defendant is correct that the use of the word "restitution" is confusing. We therefore remand this matter to the trial court to correct the minute order.

10

## DISPOSITION

The trial court is directed to correct the June 5, 2012 minute order to reflect that defendant must pay $1,653 pursuant to Vehicle Code section 22655.5, subdivision (d), to cover the California Highway Patrol's costs of towing and storing the car defendant drove in the October 2009 accident. In all other respects, the judgment is affirmed.

IKOLA, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.

11