Filed 12/14/15  P. v. Abelar CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LUIS ABELAR et al.,<br><br>    Defendants and Appellants. | F067919<br><br>(Super. Ct. Nos. DF011020A & DF011020B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant Luis Abelar.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant Erik Ramirez.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Jeffrey Grant, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

After an attack on a teenage boy in McFarland, codefendants Luis Abelar and Erik Ramirez were each convicted of robbery, assault by means likely to cause great bodily injury, and being active participants in the Myfas criminal street gang. Their sentences included enhancements for committing the robbery and assault for the benefit of a criminal street gang.

Abelar now argues the trial court erred when it refused to bifurcate the trial and sever the gang-participation charge to allow the gang evidence to be presented to the jury separately from the evidence of the robbery and assault. Abelar further argues that, even if bifurcation and severance were appropriately denied, the gang evidence included irrelevant and inflammatory matter that should have been excluded. He also maintains that the prosecution's gang expert improperly opined about Abelar's subjective motivation.

Ramirez argues the evidence was insufficient to support his conviction of assault by means of force likely to produce great bodily injury. Alternatively, he argues his sentence for the assault should have been stayed pursuant to Penal Code section 654.[1] Finally, Ramirez contends that, in sentencing him for robbery, the court erred in applying the 10-year gang enhancement set forth in section 186.22, subdivision (b)(1)(C), instead of the five-year enhancement in section 186.22, subdivision (b)(1)(B). Abelar and Ramirez join in one another's arguments.

We have found no error. The judgments will be affirmed.

### FACTS AND PROCEDURAL HISTORY

Pedro P., who was 17 years old at the time, was walking across a pedestrian bridge in McFarland around 8:00 or 9:00 p.m. on December 30, 2012. On the bridge, he encountered three males, one with a hood on his head and a scarf covering his face. He had seen the other two around town before. One of them asked Pedro for money and a

---

[1]Subsequent statutory references are to the Penal Code unless otherwise noted.

phone. Pedro gave him $2 and handed him his phone. After a short time, Pedro prepared to walk away and asked for his phone back. It was not given back. The two whose faces had been uncovered donned black masks. One of the men kicked Pedro's legs out from under him, and the three proceeded to punch and kick Pedro as he lay on the ground. From his pants pocket they took his wallet, which contained some money. Then they ran away.

Pedro ran off the bridge holding his chin, which had been hit, and soon encountered a police officer, who asked what was wrong. The officer took Pedro to the police station, where he told his story and was shown some photographic lineups. He selected photos of Abelar and Ramirez as depicting two of his attackers.

The district attorney filed an information charging Abelar and Ramirez with four counts. Count 1 charged both defendants with second degree robbery. (§ 212.5, subd. (c).) In count 2, they were charged with making criminal threats. (§ 422.) Count 3 charged defendants with assault by means of force likely to cause great bodily injury. (§ 245, subd. (a)(4).) And count 4 charged them with being active participants in a criminal street gang. (§ 186.22, subd. (a).) Counts 1 through 3 included sentence-enhancement allegations that Abelar and Ramirez committed the crimes for the benefit of a criminal street gang. (§ 186.22, subd. (b).) Upon a defense motion during trial, judgment was entered for defendants on count 2.

At trial, Pedro testified that, after he asked for his phone back, it was Ramirez who threw the first punch. Ramirez swung and missed. Then, as Ramirez was saying that Pedro should leave because Ramirez's friends were crazy, someone hit Pedro in the back and kicked his legs out from under him, causing him to fall. His glasses fell off. On the ground, he felt blows all over his body. He covered his face with his hands. Blows landed on his chin and cheeks. His head struck the ground. While one attacker was punching Pedro's face, another was kicking him. All three attackers were striking Pedro,

3.

but he could not say which attackers delivered particular blows because he was covering his face. Finally, they took his wallet from his pants and left.

When Pedro ran away from the bridge and found a police officer, his chin hurt and he was holding it. At first, Pedro found he could not fully explain to the officer what had happened because he was in shock. The officer asked Pedro if he wanted to go to the hospital, but Pedro said no because he thought it would cost money. After being taken to the police station, he recovered his composure and told the story of the robbery.

Pedro testified that he did not hear his attackers say anything about gangs and did not see them make gang signs with their hands. Ramirez, however, was wearing a shirt Pedro considered to be gang clothing because he had often seen gang members wearing the same type of shirt.

McFarland Police Officer Brian Wilson testified that he and Officer Arturo Garcia encountered Pedro near the pedestrian bridge after the robbery. Pedro made an initial statement at the scene and was taken to the police station. Wilson did not observe any injuries or marks on Pedro, and Pedro did not ask for medical treatment.

Wilson testified that he showed Pedro two photographic lineups at the police station. Pedro selected pictures of Abelar and Ramirez and said they were two of the robbers.

Officer Garcia testified that he and Wilson interviewed Pedro at the police station within 30 to 45 minutes after first making contact with Pedro. The interview was recorded and portions of it were played for the jury. Pedro told the officers that, first, Ramirez punched him in the face with both hands. The third attacker then punched him in the chin. Next, Pedro dropped to the ground, and Abelar came up and kicked him on the leg. The third attacker kicked Pedro's other leg and then all three kicked him. Ramirez punched Pedro in the face again and made his head hit the ground. Pedro said, "[T]hat's when its like I can[']t I couldn't think no more." The three attackers continued

4.

punching Pedro. They were asking him his name and going through his pockets. He was afraid for his life and said they could take his money if they did not hurt him.

Ramirez and Abelar were interviewed by Sergeant Steven Nieves on January 3, 2013. The interviews were recorded and the recordings were played for the jury. At first, Ramirez denied knowing Abelar and said he was at home on the night of the robbery and knew nothing about a crime that happened on the pedestrian bridge. Later in the interview after a break, however, Ramirez admitted he was present at the robbery with Abelar and a person known as Mosco, whose real first and middle names were Moses Miguel. He said he beat up the victim, but he denied he ever had the phone or the wallet. He admitted he asked the victim for money and received $2 from him. Abelar took the phone from the victim and told Ramirez to hit him. Ramirez did not want to hit him, but when the victim said he would not give up his phone, Ramirez "got offended" and delivered a blow. Ramirez only hit the victim once. He bought himself a beer with the $2 on the way home.

Abelar told Nieves he was a member of the Myfas gang and had been since he was 10 years old. Abelar was wearing a belt buckle bearing the letter M, which he told Nieves stood for Myfas. He admitted he was walking with someone named Moses Miguel on the pedestrian bridge on the night of December 30, 2012. Abelar did not admit he was involved in the robbery and did not mention Ramirez.

Nieves testified as the prosecution's expert on criminal street gangs. He said Myfas was the main gang in McFarland. While on duty, over the course of a number of years, he had talked with Myfas members often. The area around the pedestrian bridge where the robbery took place was part of the Myfas territory, and Nieves had often seen Myfas members on the bridge. He had often seen Myfas graffiti there, and fresh Myfas graffiti appeared there frequently.

Nieves explained that one of the two main groups of Hispanic street gangs in California is the Sureño (southern) group, and this group is affiliated with and receives

5.

orders from the prison gang known as the Mexican Mafia. Sureño gangs associate themselves with the letter M (for Mexican Mafia), which is the 13th letter of the alphabet, and also with the number 13. They wear blue and make distinctive hand signs. Nieves testified about a photograph showing some graffiti on a wall in McFarland. He pointed out the word "sur" (south); a pattern of three blue dots representing the number 13; an X (the Roman numeral 10) and a three together, to make 13; "ST" for sur trece (south 13); "MYFA"; and "VMST" for "Varrio Myfas Sur Trece" (neighborhood Myfas south 13). "Baby Boy," the moniker of a Myfas member, also appeared as part of the graffiti, as well as "187," the Penal Code section defining murder. Nieves also testified about a photograph showing similar graffiti on the pedestrian bridge where the robbery took place.

Nieves said there were around 50 to 65 Myfas members, some in prison and some out. He named several individual Myfas members of whom he was aware. He opined that the primary activities of Myfas included vandalism, robbery, criminal threats, assault, home invasions, vehicle thefts, burglaries, shootings, shooting at inhabited dwellings, illegal firearm possession, and murder.

Based on court records, Nieves testified about several offenses committed by Myfas members in McFarland. He described an incident involving two Myfas members resulting in convictions of evading police officers, assault with a deadly weapon, being a felon in possession of a firearm, and possessing a prohibited weapon. Nieves described another case in which a Myfas member was convicted of shooting at an inhabited dwelling (§ 246) and being an active member of a criminal street gang (§ 186.22). Finally, he described a prior offense committed by Ramirez, an incident of gang graffiti writing that resulted in a conviction of vandalism (§ 594).

Nieves opined that Abelar and Ramirez were Myfas members at the time of the robbery. This opinion was based on numerous sources of information, including Nieves's own reports, jail booking records, and field identification cards. Nieves also

6.

relied on Abelar's admission of gang membership during his interview following the current offenses and his belt buckle bearing an M. Abelar said he was a Myfas member when, during his booking at the county jail on the current offenses, he was asked about his affiliation for housing purposes. Abelar's first and last names, along with his moniker and Myfas affiliation, were found on a handwritten document titled "Sure[ñ]o ro[ll] call" found in the cell of a Sureño leader in the county jail. Ramirez also admitted he was a Myfas member in his interview with Nieves after his arrest for the vandalism offense. Ramirez said he was a Sureño during his booking on the current offense and said he was a Myfas member during his booking for a prior offense. Nieves reviewed a field identification card documenting another officer's contact with Ramirez. The card indicated that in 2012, Ramirez was seen in the company of another Myfas member.

Nieves observed gang tattoos on both defendants. He contacted the third suspect in the current offenses, a juvenile identified by Abelar and Ramirez as Mosco; Mosco had a blue handkerchief and two blue hats emblazoned with the letters "KC," a legend used by Kern County gang members to identify themselves. The current offenses were committed in a place frequented by Myfas members.

The prosecutor presented Nieves with hypothetical crimes based on the details of this case. Nieves opined that such crimes would be for the benefit of, at the direction of, or in association with a criminal street gang.

The jury found both defendants guilty on counts 1, 3, and 4. It found true the gang-enhancement allegations on counts 1 and 3. On Abelar, the court imposed a sentence of 15 years, calculated as follows: the middle term of three years for robbery, plus 10 years for the gang enhancement on the robbery count, plus one year (one-third of the middle term) for assault, and one year for the gang enhancement on the assault count. The sentence for count 4 was stayed pursuant to section 654. Ramirez received a sentence of 17 years: the upper term of five years for robbery, plus 10 years for the gang

enhancement on that count, plus one year for assault, and one year for the gang enhancement on the assault.  The sentence for count 4 was, again, stayed.

## *DISCUSSION*

### I.    *Bifurcation and severance of gang issues*

Abelar argues the trial court erred when it denied his motion to bifurcate the trial so the gang evidence could be presented to the jury separately from the evidence of the underlying offenses.  Ramirez joins in the argument.  The People construe the argument as including a contention that count 4, active participation in a criminal street gang, should have been severed for a separate trial.

Both defendants filed written motions in limine to bifurcate.  At the hearing on the motions, the court and parties expressed their understanding that the motions included a request to sever count 4.  Defendants argued the gang evidence was not relevant to the robbery and assault charges and would prejudice the jury in its consideration of those charges.  The People contended bifurcation was unnecessary because the gang evidence was relevant, not only to the gang enhancements and the gang-participation count, but also to defendants' motive and intent in committing the robbery and assault.  The trial court denied the motions, stating:

> "Here the gang activities are … inextricably intertwined with the charged offenses.  And I think under [Evidence Code section] 352 the prejudicial impact would not outweigh the probative value if we give, which we will give [CALCRIM No. 1403], limited purpose of evidence of gang activity.  [¶] … [¶]  [That instruction] would indicate to the jury that they consider that evidence only for the limited purposes stated.  I will respectfully deny, for that reason, the motion to bifurcate gang evidence."

### A.    *Severance*

We will first consider the issue of severing count 4, the charge of active gang participation.  As will be seen, the analysis is simplified by taking this question before the bifurcation question.

Severance of charges is sometimes necessary to avoid prejudice to a defendant, even if the charges are properly joined under section 954. (*People v. Carter* (2005) 36 Cal.4th 1114, 1153.) Because multiple trials are more costly than a single trial, a party seeking severance must clearly establish there is a substantial danger of prejudice requiring charges to be tried separately. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1050.) Several factors are relevant in determining whether this danger has been established, including whether any of the charges are especially likely to inflame the jury and whether the evidence on some charges will artificially strengthen a weak case on other charges. (*People v. Geier* (2007) 41 Cal.4th 555, 575; *Carter, supra,* at p. 1154.) But the "crucial factor" in the analysis is the extent to which evidence in either of the two severed trials would be cross-admissible in the other. (*People v. Stitely* (2005) 35 Cal.4th 514, 531.) "[P]rejudice is usually dispelled" if "evidence of one crime would be admissible in a separate trial of the other crime .…" (*Id.* at pp. 531-532.) We review the trial court's ruling on a severance motion for abuse of discretion. (*People v. Smith* (2007) 40 Cal.4th 483, 510.) The trial court abuses its discretion if its ruling exceeds the bounds of reason. (*Carter, supra*, at p. 1153.) If the ruling was correct at the time it was made before trial, it can be reversed on appeal only if, during trial, joinder of the charges turned out to be so grossly unfair as to deny due process. (*People v. Stitely, supra*, at p. 531.)

In this case, the facts of the robbery and assault would have been admissible in a separate trial for the charge of active gang membership. This is because the prosecution had evidence the robbery and assault were gang related, which in turn helped to prove defendants were active gang members. Further, it is untrue the prosecution's case in either trial would have been a weak case needing bolstering by the evidence to be presented in the other. There was strong evidence defendants committed the robbery and the assault and also strong evidence they were active gang participants. It also is untrue that joinder of the gang charge was a device to import highly inflammatory gang evidence into the trial of the robbery and assault charges. Only one of the predicate

9.

offenses relied on by the prosecution's gang expert—Ramirez's vandalism—was committed by either defendant. So far as it directly related to defendants, the gang evidence involved only graffiti, tattoos, clothing, a roll-call sheet, and admissions of gang membership. The evidence related to other gang members also was not markedly inflammatory. For these reasons, the court's decision to deny severance did not exceed the bounds of reason.

### B.      *Bifurcation*

A trial court has discretion to bifurcate the trial in a case with gang enhancements to avoid the danger of the jury being improperly influenced by the gang evidence when it decides whether the defendant is guilty of the charged crime. (*People v. Hernandez, supra*, 33 Cal.4th at p. 1049.) Predicate offenses and other gang evidence "may be so extraordinarily prejudicial, and of so little relevance to guilt, that [they threaten] to sway the jury to convict regardless of the defendant's actual guilt." (*Ibid.*)

Despite these considerations, "less need for bifurcation generally exists with the gang enhancement than with a prior conviction allegation." (*People v. Hernandez, supra*, 33 Cal.4th at p. 1048.) This is because "[a] prior conviction allegation relates to the defendant's *status* and may have no connection to the charged offense; by contrast, the criminal street gang enhancement is attached to the charged offense and is, by definition, inextricably intertwined with that offense." (*Ibid.*) Further, because there are efficiencies to be gained by conducting a nonbifurcated trial, some evidence that would be inadmissible (under Evid. Code, § 352, for instance) at a trial of the underlying crime alone can be admitted in a nonbifurcated trial of an offense with a gang enhancement. (*Hernandez, supra,* at p. 1050.) The burden is on the defendant to show that the considerations favoring a nonbifurcated trial are substantially outweighed by a danger of undue prejudice. (*Ibid.*) The danger of undue prejudice must be clearly established by the defendant. (*Id.* at p. 1051.) On appeal, the trial court's ruling on bifurcation is reviewed for abuse of discretion. (*Ibid.*)

The trial court acts within its discretion when it denies a bifurcation motion if the gang evidence will be admissible to prove the charged offenses. "Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.] To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary." (*People v. Hernandez, supra*, 33 Cal.4th at pp. 1049-1050.)

As we have explained, it was proper to deny severance in this case; consequently, the active-gang-participation charge was properly tried together with the robbery and assault charges. This means the evidence of the existence of the gang and defendants' active membership in it would properly have been admitted in the trial of the robbery and assault even if bifurcation had been granted. That in turn means most of the gang evidence would have been cross-admissible in the substantive-offense phase of a bifurcated trial. Under the authority just discussed, it follows from this alone that bifurcation was unnecessary, and the trial court did not abuse its discretion in denying the motion.

We further believe the nature of the evidence would have rendered bifurcation unnecessary even if there had been no gang-participation count joined to the robbery and assault charges. As the People maintain, the gang evidence did have some relevance to the robbery and assault, since it supported the prosecution's theory the three perpetrators had a gang-related motivation for committing a robbery and assault in concert in a location claimed by the gang as its territory. The particular gang evidence presented in this case was not of a highly inflammatory kind, and the evidence that defendants committed the robbery and assault was strong, as we have said.

11.

For all these reasons, the trial court did not abuse its discretion when it denied the motion to bifurcate.

## II.  *Admission of gang evidence*

Abelar argues the trial court allowed the introduction of gang evidence that was "excessive," "not relevant to the underlying charges," and "more prejudicial than probative."  Ramirez joins in the argument.

As our remarks above indicate, the gang evidence not only was relevant to prove the gang offense in count 4 and the gang enhancements on counts 1 and 3, but also was probative of defendants' motive in committing the robbery and assault charged in counts 1 and 3.  We understand defendants' argument here to be that, even if this is so, the trial court admitted more gang evidence than was necessary or appropriate, and the probative value of this excess evidence was substantially outweighed by its prejudicial effect on the jury, within the meaning of Evidence Code section 352.  Gang evidence admitted to prove a gang enhancement should not include that which is cumulative and has an inflammatory impact beyond the impact properly created to prove the gang enhancement.  (*People v. Leon* (2008) 161 Cal.App.4th 149, 169; *People v. Williams* (2009) 170 Cal.App.4th 587, 610-611.)

Defendants have not demonstrated error of this kind.  Abelar's brief focuses on the contention that the gang evidence had little tendency to prove the robbery and assault.  Even if this were correct, it would not show any error in admitting the gang evidence since the gang evidence was highly probative with respect to the gang charge and enhancements.  Abelar does not say which items of gang evidence were excessive and unnecessary to prove the gang charge and enhancements.  He does not identify any place in the record in which his trial counsel identified any particular items and requested their exclusion.  There is no written motion in the record requesting exclusion of any particular items, and an examination of the transcript of the oral proceedings reveals only the contention that all the gang evidence was prejudicial and should have been presented in a

separate phase of a bifurcated trial. Abelar simply has not made a presentation sufficient to enable us to hold that any of the evidence admitted was substantially more prejudicial than probative under Evidence Code section 352.

In any event, we have reviewed the evidence and do not find the trial court would have been obliged to find any of it to be substantially more prejudicial than probative. The evidence was all of kinds ordinarily used to establish the elements of the offense and enhancement defined by section 186.22, subdivisions (a) and (b). The behavior it described by defendants was not extreme or inflammatory. The predicate offenses by other gang members were not excessively numerous or particularly inflammatory. The jury was instructed not to view the gang evidence as evidence of a propensity to commit crimes. We see no reason why, under the circumstances, the jury would have been unable to follow this instruction.

Abelar also asserts that the evidence of his gang activities constituted evidence of his character offered to prove conduct on a specified occasion and its admission therefore contravened Evidence Code section 1101. In other words, he claims the gang evidence was admitted to show he was the sort of person who would commit a robbery and assault, and therefore he must be guilty of the robbery and assault in this case. As the People point out, no objection on this ground was made in the trial court, so the issue is forfeited. (*People v. Saunders* (1993) 5 Cal.4th 580, 590; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.) Further, Abelar's argument overlooks the fact that the gang evidence was admitted to show the elements of the gang charge and enhancements as required by section 186.22, subdivisions (a) and (b). This fact means the evidence was admissible under section 1101 "to prove some fact … other than [the defendants'] disposition to commit" robbery and assault. (Evid. Code, § 1101, subd. (b).)

Finally, Abelar argues—in two separate sections of his brief—that the admission of the gang evidence denied him due process of law. This argument is based on the

13.

claims the evidence was irrelevant and inflammatory and was admitted to prove propensity, claims we reject for the reasons already stated.

For all the above reasons, we conclude defendants have not shown that the admission of gang evidence at trial was error under section 352 or 1101 of the Evidence Code and did not deny defendants due process of law.

### III.    *Expert opinion testimony*

Abelar argues the trial court erred in admitting Sergeant Nieves's testimony that a hypothetical crime, the facts of which were based on the prosecution's evidence in this case, would be committed for the benefit of, in association with, or at the direction of a criminal street gang. He says this testimony was improper because it purported to describe his subjective intent.[2]

Neither defendant made any objection on this basis in the trial court. Multiple objections to Nieves's expert testimony were made, but not the objection that the opinion purported to state the subjective intent of defendants. The issue, therefore, has not been preserved for appellate review. (*People v. Saunders, supra,* 5 Cal.4th at p. 590; *Doers v. Golden Gate Bridge etc. Dist., supra,* 23 Cal.3d at pp. 184-185, fn. 1.)

If the argument were not forfeited, we would reject it on its merits. A gang expert's testimony that a hypothetical crime would be committed for the benefit of a gang is not an improper opinion about a defendant's subjective intent. Our Supreme Court specifically approved this type of expert testimony in *People v. Vang* (2011) 52 Cal.4th

---

[2]In its section heading for this topic, Abelar's brief says the expert improperly relied on *hearsay* to support his opinion. The brief goes on to cite a case about the use of hearsay by expert witnesses. The brief does not, however, develop any argument about improper use of hearsay by Nieves. Instead, it makes an argument that Nieves offered an improper opinion about defendants' subjective intent. It thus does not appear that Abelar actually intended to make the hearsay argument; but if he did, the argument is forfeited by his failure to develop it. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

1038.  In that case, the prosecution's gang expert "properly could, and did, express an opinion, based on hypothetical questions that tracked the evidence, whether the assault, if the jury found it in fact occurred, would have been for a gang purpose.  'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement.  [Citation.]"  (*Id.* at p. 1048.)  Ordinarily, an expert cannot testify about whether an actual defendant acted for the benefit of a gang (*id.* at p. 1048 & fn. 4), but that is not what happened here; the expert testified in response to a hypothetical question.  "Using hypothetical questions is just as appropriate on this point as on other matters about which an expert may testify."  (*Id.* at p. 1052.)

Contrary to Abelar's argument, this case is not similar to *People v. Killebrew* (2002) 103 Cal.App.4th 644.  In that case, the prosecution's gang expert testified that every individual in a group of gang members riding in three cars would know about a gun being transported in one of the cars.  (*Id.* at p. 652.)  Although the expert answered questions that were hypothetical in form, the *Killebrew* court understood the resulting testimony to be about the subjective knowledge and intent of an actual defendant.  (*Id.* at pp. 652, fn. 7, 658.)  In the present case, Nieves testified that a hypothetical robbery would be gang related if it involved three gang members, acting in concert, who beat and robbed a teenager at a gang hangout in gang territory.  This is not the type of testimony rejected in *Killebrew*.  In fact, the Supreme Court in *Vang* expressly disapproved any interpretation of *Killebrew* according to which it limited the use of hypothetical questions in the examination of gang experts.  (*People v. Vang, supra*, 52 Cal.4th at pp. 1047-1048, fn. 3.)

## IV.  *Sufficiency of evidence of assault by means likely to cause great bodily injury*

Ramirez argues the evidence was not sufficient to prove the assault he committed involved means likely to cause great bodily injury.  Abelar joins in the argument.

When considering a challenge to the sufficiency of the evidence to support a judgment, we review the record in the light most favorable to the judgment and decide whether it contains substantial evidence from which a reasonable finder of fact could make the necessary finding beyond a reasonable doubt. The evidence must be reasonable, credible, and of solid value. We presume every inference in support of the judgment that the finder of fact could reasonably have made. We do not reweigh the evidence or reevaluate witness credibility. We cannot reverse the judgment merely because the evidence could be reconciled with a contrary finding. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

To prove an assault by means likely to cause great bodily injury within the meaning of section 245, subdivision (a)(4), the prosecution did not have to show any actual injury. It had to prove only that the means used were *likely* to cause great bodily injury. (*People v. Wingo* (1975) 14 Cal.3d 169, 176; *People v. Parrish* (1985) 170 Cal.App.3d 336, 343.) Punching and kicking can constitute means likely to produce great bodily injury. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028; *Wingo, supra*, at p. 176.) Evidence regarding the force of the blows and the manner and circumstances of their application is probative of whether they were likely to cause great bodily injury. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.)

Ramirez argues the evidence was insufficient because there was "no testimony about how hard [Pedro] was hit in the head, or how many times [he] was hit in the head," and because the police observed no injuries and Pedro did not ask for medical treatment. We do not agree.

Pedro testified one of his attackers kicked his legs out from under him and he fell. Then all three punched and kicked him as he lay on the ground, including blows to his chin and cheeks. When Ramirez punched him, his head hit the pavement. When he first spoke to a police officer shortly afterward, his chin hurt, he felt he was in shock, and he could not coherently explain what happened. After Pedro's head hit the ground, he

16.

"couldn't think." He feared for his life and was in pain. He did not ask police officers to get medical treatment for him, and he did not appear to them to need it. He testified he declined to go to the hospital because he feared the cost.

From this evidence, the jury could reasonably infer that Pedro's attackers stunned by him knocking him down and then punching his head and causing it to strike the ground. From this, in turn, the jury could infer the force used was likely to cause great bodily injury. Neither defendant suggests any difficulty arises from the fact that, for the most part, Pedro did not know which attacker was responsible for which blows. Consequently, we reject defendants' argument that the evidence was insufficient to prove count 3.

## V.     *Section 654*

Ramirez argues his sentence for the assault should have been stayed pursuant to section 654. Abelar joins in the argument.

Section 654 provides, in part, as follows:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

This statute bars double punishment, not only for a single criminal act, but for a single indivisible course of conduct in which the defendant had only one criminal intent or objective. (*People v. Bauer* (1969) 1 Cal.3d 368, 376; *In re Ward* (1966) 64 Cal.2d 672, 675-676; *Neal v. State of California* (1960) 55 Cal.2d 11, 19, overruled on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334; *People v. Brown* (1958) 49 Cal.2d 577, 590-594.) We review under the substantial evidence standard the court's factual finding, implicit or explicit, of whether or not there was only one criminal act or a course of conduct with only one criminal objective. (*People v. Coleman* (1989) 48 Cal.3d 112, 162; *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1408.) "The question … of whether the acts of which defendant has been convicted constitute an

17.

indivisible course of conduct is primarily a factual determination, made by the trial court on the basis of its findings concerning the defendant's intent and objective in committing the acts. This determination will not be reversed on appeal unless unsupported by the evidence presented at trial." (*People v. Murphy* (1980) 111 Cal.App.3d 207, 213.) As always, we review the trial court's conclusions of law de novo. (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1687.)

Courts have held in many cases that section 654 prohibited separate punishments where a defendant harmed or threatened a victim during a robbery and was convicted of both robbery and another crime against the victim's person, such as an assault, kidnapping, homicide, or attempted homicide. (See *People v. Milan* (1973) 9 Cal.3d 185, 196-197 [robbing cab driver was sole objective of crimes of robbery, kidnapping for purpose of robbery with bodily harm, and murder, so only one punishment was permissible]; *In re Henry* (1966) 65 Cal.2d 330, 330-331 [robbing liquor store owner was sole objective of attempted armed robbery and assault with deadly weapon]; *People v. Ridley* (1965) 63 Cal.2d 671, 677-678 [robbery and assault with deadly weapon with intent to commit murder had only one objective]; *People v. Green* (1979) 95 Cal.App.3d 991, 1008 [robbery, kidnapping, and attempted murder all had robbery as their objective]; *People v. Lowe* (1975) 45 Cal.App.3d 792, 795 [robbery and murder of one victim and robbery and attempted murder of another had only one objective each]; *People v. Chapman* (1968) 261 Cal.App.2d 149, 180 [robbery and murder had one objective]; *People v. Logan* (1966) 244 Cal.App.2d 795, 798 [attempted robbery and assault with intent to kill had one objective], overruled on other grounds by *People v. Collie* (1981) 30 Cal.3d 43.) Our Supreme Court has stated in dictum, for example, that "one who uses a deadly weapon in the commission of a first degree robbery simultaneously assaults the victim with such weapon but clearly may not be punished for both the robbery and assault with a deadly weapon." (*People v. Beamon* (1973) 8 Cal.3d 625, 637.)

At the same time, it is settled that if the robber uses more force than necessary to commit the robbery, and the additional use of force has a separate objective, section 654 may permit separate punishments for robbery and the other crime. (See *People v. Cleveland* (2001) 87 Cal.App.4th 263, 271-272 [robbery and attempted murder of same victim had separate objectives]; *People v. Sandoval* (1994) 30 Cal.App.4th 1288, 1299-1300 [attempted robbery and attempted murder of victim had separate objectives]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 189-190 [attempted murder and robbery of one victim had separate objectives], disapproved on other grounds as stated in *Ballard v. Estelle* (9th Cir. 1991) 937 F.2d 453, 458, fn. 6; *People v. Williams* (1966) 244 Cal.App.2d 658, 659, 662-663 [robbery and assault with deadly weapon of same victim had separate objectives].)

In *People v. Nguyen, supra,* 204 Cal.App.3d 181, for instance, the Court of Appeal affirmed the trial court's decision to impose separate punishments for robbery and attempted murder. The defendant and an accomplice entered a market and forced the clerk into a bathroom. The accomplice took the clerk's money and passport and forced him to lie on the floor while the defendant emptied the cash register. The accomplice shot the clerk in the back as he lay on the floor. (*Id.* at p. 185.) The appellate court held that "substantial evidence supports the [trial] court's implied finding of divisibility" of objectives. (*Id.* at p. 190.) Acknowledging that the shooting could have been intended to further the robbery by eliminating the victim as a witness or facilitating the perpetrators' escape, the court nevertheless thought the finding of separate objectives was warranted: "[A]t some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and a more sinister goal than mere successful commission of the original crime. We should not lose sight of the purpose underlying section 654, which is 'to insure that a defendant's punishment will be commensurate with his culpability.'" (*Id.* at p. 191.) The court further stated the shooting "constituted an example of gratuitous violence against a

19.

helpless and unresisting victim which has traditionally been viewed as not 'incidental' to robbery for purposes of [section] 654." (*Id.* at p. 190.)

In this case, the trial court found the assault and robbery had separate objectives. It said, "The crimes and their objectives in Counts 1 and 3 are predominantly independent of each other; [and] the crimes involve separate acts of violence or threats of violence."

Ramirez maintains there is no evidence to support the trial court's finding the assault had an objective separate from the objective of the robbery. He argues, "The purpose of the assault was to overcome [Pedro] so that he could not retrieve his cellphone and the assailants could obtain his wallet. Upon obtaining this single objective, the assailants fled. There was no gratuitous violence outside the violence necessary to effectuate the robbery."

The People point out that Pedro did not defend himself and argue that the court could reasonably find the perpetrators intended "to punish [Pedro] for not respecting Ramirez's warning to leave without his cell phone." They further argue the evidence supported a finding that Pedro's attackers had the goal of instilling fear of their gang in the community.

The question is close, but the People have the better argument. First, the court could reasonably view the beating as "an example of gratuitous violence against a helpless and unresisting victim." (*People v. Nguyen, supra*, 204 Cal.App.3d at p. 190.) When knocked down, Pedro merely lay on the ground and covered his head. He told the perpetrators they could take his money if they refrained from hurting him. They did not refrain and instead administered a beating that was unnecessary to complete the robbery. Second, Ramirez's interview statement supported a finding of an objective beyond completion of the robbery. He said he was not planning to hit Pedro and decided to do so only because he was "offended" when Pedro asked to have his phone back. This remark expressed a purpose distinct from the purpose of taking property: that of requiting the

20.

offense Ramirez took. Substantial evidence supported the trial court's finding of two objectives.

## VI. *Ten-year vs. five-year gang enhancement*

Ramirez's final argument is that the trial court erred when it imposed a 10-year gang enhancement pursuant to section 186.22, subdivision (b)(1)(C), instead of a five-year enhancement pursuant to section 186.22, subdivision (b)(1)(B). Abelar joins in the argument. The argument is based on statements in the information indicating robbery is a serious felony (which would warrant the five-year enhancement) and not pointing out that robbery is also a violent felony (to which the 10-year enhancement applies). As we will explain, defendants' argument is based on a misunderstanding of the purpose of these statements in the information. The information did not purport to state whether the five-year enhancement or the 10-year enhancement would apply if defendants were found guilty of robbery. As a matter of law, the 10-year enhancement was available at sentencing, and the information could not reasonably be understood to be saying otherwise.

Section 186.22, subdivision (b)(1)(B), provides that, if a felony is proved to be gang related, and "the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the [defendant] shall be punished by an additional term of five years." Section 1192.7, subdivision (c)(19), defines "robbery or bank robbery" as a serious felony. Section 186.22, subdivision (b)(1)(C), provides that if a felony is proved to be gang related and "the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the [defendant] shall be punished by an additional term of 10 years." Section 667.5, subdivision (c)(9), defines "[a]ny robbery" as a violent felony.

For a crime such as robbery, which appears on both the list of serious felonies and the list of violent felonies, the only reasonable interpretation of section 186.22, subdivision (b)(1)(B) and (C), is that the 10-year enhancement is available. Whether the five-year enhancement is also available as an alternative we need not say.

21.

Defendants, however, maintain that the 10-year enhancement cannot be applied to the robbery in this case because of the way the robbery and the enhancement are described in the information. The information states:

> "Count: 001, on or about December 30, 2012, Erik Daniel Ramirez, and Luis Abelar, did willfully and unlawfully take personal property in the possession of [Pedro], from his or her person or immediate presence and against his or her will, by means of force or fear, within the meaning of Penal Code section 212.5(c), a felony. It is further alleged that this offense is a serious felony within the meaning of Penal Code section 1192.7(c)(19).

> "Enhancement

> "It is further alleged as to [Erik Daniel Ramirez and] Luis Abelar. that the above offense was committed for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to promote, further or assist in criminal conduct by gang members, within the meaning of Penal Code section 186.22(b)(1). It is further alleged that the above offense is a serious felony, within the meaning of Penal Code section 1192.7(c)(28)." (Capitalization omitted.)

Section 1192.7, subdivision (c)(19), provides that robbery is a serious felony, as we have mentioned. Section 1192.7, subdivision (c)(28), defines as a serious felony "any felony offense, which would also constitute a felony violation of Section 186.22." Our Supreme Court has held that the latter provision refers not only to a felony violation of the gang-participation offense set forth in section 186.22, subdivision (a), but also to any felony offense for which a gang enhancement is found true under section 186.22, subdivision (b). (*People v. Briceno* (2004) 34 Cal.4th 451, 456, 464.) The information thus stated twice that the robbery and enhancement amounted to a serious felony.

Ramirez argues, because of these statements, "the parties were put on notice that … count one qualified as a 'serious' felony under section 1192.7, and thus, [Ramirez] was subject to an enhanced five-year sentence under section 186.22, subdivision (b)." The jury instructions did not distinguish between the five-year and 10-year enhancements, and the verdict form stated the enhancement allegation was found

22.

true "within the meaning of [Penal Code] Section 186.22(b)(1) as alleged in the first count of the Amended Information." Consequently, Ramirez contends, the information must be understood to have pleaded, and the verdict to have found, that he committed a serious felony to which the five-year enhancement applies, not a violent felony to which the 10-year enhancement applies. Putting the point another way, Ramirez asserts that "the state affirmatively *chose* to make an election between subdivisions (b)(1)(B) and (b)(1)(C) …." He maintains the imposition of the 10-year enhancement was contrary to what the People pleaded and proved and therefore denied him due process of law. His trial counsel made an objection on this basis in his sentencing statement and at the sentencing hearing. The 10-year enhancements were imposed over this objection.

The People argue the information took no position, and the verdict made no finding, about whether the five-year or 10-year enhancement applied. Instead, the purpose of the statements that the robbery as enhanced was a serious felony was to notify defendants that if they were convicted, the offense would be a strike subjecting them to enhanced sentences under the Three Strikes law in future prosecutions.

We agree with the People that there was no error. The information contains no reference to the five-year or the 10-year enhancement or to section 186.22, subdivision (b)(1)(B) or (b)(1)(C). The information was correct in its statements that robbery is a serious felony under section 1192.7, subdivision (c)(19), and that a gang-related felony is a serious felony under section 1192.7, subdivision (c)(28). The offense's status as a serious felony does, as the People point out, mean it can be used as a strike to enhance the sentence for future felonies under the Three Strikes law. (§ 1170.12, subd. (b)(1).) Informations commonly include a statement that a charged offense is a serious felony under section 1192.7, not because of any consequences this fact has for sentencing on that offense in the current proceeding, but because of the consequences for sentencing in potential future cases. It is beyond dispute that robbery is deemed a violent felony by section 667.5 and that therefore the 10-year enhancement can be applied to it.

23.

Defendants have not cited any authority for their assertion that the references in the information to a serious felony "must be deemed a discretionary charging decision" to pursue only the five-year enhancement. There was no basis for any assumption on the part of defendants or their trial counsel that the statements in the information amounted to an election on the prosecution's part to seek the five-year enhancement instead of the 10-year enhancement. Nor do defendants claim they relied on any such assumption in any way.

No due process violation appears. "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess* (1955) 45 Cal.2d 171, 175.) In this case, the information charged defendants with robbery with a gang enhancement, and that charge and enhancement were proved at trial. If the information had contained a false assurance that only the five-year enhancement would be pursued, that might have been a due process violation; but, as we have said, the information cannot reasonably be construed as expressing that assurance.[3] Further, defendants have not explained how the description of robbery in the information as a serious felony, or the omission of a description of it as a violent felony, had any effect on the preparation of their defense or caused them to be surprised by the evidence offered at trial.

---

[3]In *People v. Le* (2015) 61 Cal.4th 416, 424, fn. 5, the California Supreme Court found it unnecessary to decide whether it is "permissible" to plead an enhancement under section 186.22, subdivision (b)(1), without stating whether punishment is being sought under subdivision (b)(1)(A), (B) or (C). We also need not decide that issue. Defendants' argument is only that the information *did* convey they were being prosecuted under subdivision (b)(1)(B) rather than (b)(1)(C)—not that the prosecution was required to make such a choice—and therefore the court could not turn around and impose sentence under subdivision (b)(1)(C). We hold only that the information did not convey that the matter had been determined either way; but it did provide all the data necessary to show defendants their exposure, so it could not reasonably be seen as lulling them into a mistaken belief that the lower enhancement was being sought, contrary to their argument.

Ramirez cites *People v. Mancebo* (2002) 27 Cal.4th 735, but that case is distinguishable. Mancebo was convicted of sex offenses against two victims on separate occasions. He was charged under the One Strike law (§ 667.61), which provided for an enhanced sentence of 25 years to life when (among other situations) two or more special circumstances were pleaded and proved in connection with the current offense. The information alleged, and the evidence showed, that two special circumstances existed for each victim: for one victim, Mancebo used a gun and kidnapped the victim, and for the other, he used a gun and tied or bound the victim. (*Mancebo, supra,* at pp. 739-740.) The trial court, however, wished to employ the gun-use facts to impose a different enhancement, the 10-year enhancement provided by section 12022.5, subdivision (a). But this would have made the one-strike sentence inapplicable, since the gun-use facts could not be used to support multiple enhancements for each victim. To solve the problem, the trial court ruled that another special circumstance enumerated in the One Strike law—multiple victims—had effectively been pleaded and proved—even though it was not mentioned by name in the information—because the information alleged and the jury found that Mancebo committed offenses against two victims. The court then used the multiple-victim circumstance, along with the kidnapping and the tying and binding, to support the one-strike sentence of 25 years to life for each victim, and employed the gun-use circumstance to add 10 years to the sentence for each victim. (*Mancebo, supra,* at pp. 740-741.)

Our Supreme Court held the sentence was unauthorized. The plain language of section 667.61 required all the circumstances upon which the sentence enhancement depended to be alleged in the accusatory pleading and found true at trial or admitted by the defendant. The information did not allege the multiple-victim circumstance, so the trial court could not properly base the one-strike sentence on that circumstance. The trial court's reliance on the unpleaded circumstance "violated the explicit pleading provisions of the One Strike Law." Further, the One Strike law specified that, if only two

25.

circumstances are pleaded and proved, those circumstances must be used to impose sentence under the One Strike law rather than another provision, unless another provision provides a longer term. (*People v. Mancebo, supra*, 27 Cal.4th at pp. 743-744.) In addition, the "the pleading was inadequate because it failed to put defendant on notice that the People, for the first time at sentencing, would seek to use the multiple victim circumstance to secure indeterminate One Strike terms under section 667.61, subdivision (a) *and* use the circumstance of gun use to secure additional enhancements under section 12022.5(a)." (*Id*. at p. 745.) This lack of notice infringed Mancebo's "due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*Id.* at p. 747.)

In the present case, as Ramirez concedes, section 186.22 does not have specific pleading requirements like those in the One Strike law. The *Mancebo* court's holding on the statutory issue has no application here.

The due process holding is inapplicable as well, for reasons we have already indicated. The information informed Ramirez and Abelar they were charged with robbery with a gang enhancement. Robbery, as a matter of law, is a violent felony for which the 10-year gang enhancement is available. The information's description of the robbery as a serious felony could not reasonably have been construed as a declaration of the prosecution's intention to limit itself to seeking the five-year enhancement. Therefore, there was nothing of which defendants were, to their detriment, not notified.

*People v. Haskin* (1992) 4 Cal.App.4th 1434, which Ramirez also cites, is distinguishable as well. Haskin was convicted of robbery. The trial court found true two, five-year enhancement allegations under section 667. Haskin then admitted an additional one-year enhancement allegation based on a burglary and set forth in the information pursuant to section 667.5, subdivision (b). After Haskin admitted this burglary, the trial court reviewed records submitted by the prosecution, found the burglary was a residential burglary, declared the correct enhancement was a five-year enhancement based on

section 667, and imposed that enhancement. The trial court believed the five-year enhancement was required to be imposed, even though the information alleged a one-year enhancement based on a different statute, and Haskin made his admission before the court explained what it had in mind. (*Haskin, supra,* at pp. 1437-1438.) The Court of Appeal reversed. Haskin's right to due process of law was violated because the information notified him the prosecution was seeking to impose a one-year enhancement for a burglary, not a five-year enhancement for a residential burglary, and nothing was done prior to the taking of his admission to tell him otherwise. (*Id.* at pp. 1439-1440.)

In the present case, the information told defendants the current offense was robbery. It told them they were being charged with a gang enhancement under section 186.22, which imposes an additional 10-year term where the underlying offense is a violent felony. Robbery is defined by statute as a violent felony. Unlike in *Haskin*, defendants were not expressly charged under one enhancement statute, asked to make an admission based on that charge, and then sentenced under a different statute.

### *DISPOSITION*

The judgments are affirmed.

_____
Smith, J.

WE CONCUR:


_____
Gomes, Acting P.J.


_____
Detjen, J.

27.